STEPHEN C. KENNEY (SBN 53883)
KYMBERLY E. SPEER (SBN 121703)
KENNEY & MARKOWITZ L.L.P.
255 California Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 397-3100
Facsimile: (415) 397-3170
skenney@kennmark.com
kspeer@kennmark.com

Attorneys for Plaintiff
CONTINENTAL AIRLINES, INC.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

CONTINENTAL AIRLINES, INC.,

Plaintiff,

v.

MUNDO TRAVEL CORPORATION, ERIK VALLEJO and DOES 1 through 20,

Defendants.

CASE NO. 1:05-CV-01050-REC-LJO

**PLAINTIFF'S AMENDED[1] MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**(Fed.R.Civ.P. 12(b)(6))**

Date: December 12, 2005
Time: 1:30 p.m.
Courtroom: 1, Hon. Robert E. Coyle

LOCATION: 1130 O Street
Fresno, CA

[1] This amended brief is submitted because page 6 inadvertently was omitted from original copy filed with the Court November 17, 2005.

Kenney & Markowitz L.L.P.

{30417.301859 0119740.DOC}

1

PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CASE NO. 1:05-CV-01050-REC-LJO

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. GOVERNING LEGAL STANDARD ..... 1

III. PLAINTIFF'S ALLEGATIONS ..... 1

1. Underlying Agency Relationship between the Parties ..... 1

2. Relevant Terms of the Parties' Agreements ..... 2

3. Defendants' Wrongful Acts ..... 4

IV. FIRST CLAIM: BREACH OF WRITTEN AGENCY AGREEMENT ..... 4

A. Continental's Booking and Ticketing Policy Is Inextricably Part of the Parties' Contractual Relationship ..... 4

B. The ARA's Choice of Law Provision Is Inapplicable and Irrelevant ..... 6

C. There Is No Reason to "Construe The ARA Against Continental" ..... 7

V. SECOND CLAIM: BREACH OF FIDUCIARY DUTY ..... 8

VI. THIRD CLAIM: FRAUD ..... 10

VII. FIFTH CLAIM: STATUTORY UNFAIR COMPETITION (B&P CODE §17200) ..... 11

VIII. THE "ECONOMIC LOSS RULE" DOES NOT APPLY TO CONTINENTAL'S TORT CLAIMS ..... 11

IX. CONCLUSION ..... 12

Kenney & Markowitz L.L.P.

# TABLE OF AUTHORITIES

Page

**Cases**

*Airlines Reporting Corporation v. Private Label Travel* 1993 WL 271470 (N.D. Ill. 1993) .......... 9

*Airlines Reporting Corporation v. S and N Travel, Inc.* 58 F.3d 857 (2nd Cir. 1995) .......... 7, 9

*Arno v. Club Med Inc.* 22 F.3d 1464 (9th Cir.1994) .......... 7

*Bailey v. Grass* 2004 WL 3000944, Va. Cir. Ct., 2004 .......... 12

*Balisteri v. Pacifica Police Dept.* 901 F.2d 696 (9th Cir. 1990.) .......... 1

*Cahill v. Liberty Mutual Ins. Co.* 80 F.3d 336 (9th Cir. 1996) .......... 1

*Conley v. Gibson* 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957) .......... 1

*Estate of Darulis v. Garate* 401 F.3d 1060 (9th Cir. 2005) .......... 6

*In re Northwest Airlines Corp.* 208 F.R.D. 174 (E.D. Mich. 2002) .......... 5, 8

*In re Vinogradova* 270 B.R. 159 (S.D. N.Y. 2001) .......... 9

*In re: Bishop* 276 B.R. 737 (W.D. Va 2001) .......... 8, 9

*Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 127Cal.Rptr.2d 614, 58 P.3d 450 .......... 11

*M-CAM v. D'Agostino* Slip Copy, 2005 WL 2123400, W.D.Va., 2005 .......... 11

*Nedlloyd Lines B.V. v. Superior Court (Seawinds Ltd.)* (1992) 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 .......... 6

*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 69 Cal.Rptr.2d 466 .......... 12

*People v. Cook* (1959) 167 Cal.App.2d 247, 334 P.2d 307 .......... 8

*Prospect Development Co., Inc. v. Bershader*

258 Va. 75, 515 S.E.2d 291 (Va. 1999.) ........ 10

*Republic Airlines, Inc. v. Civil Aeronautics Board*
756 F.2d 1304 (8th Cir. 1985) ........ 5

*Robinson Helicopter Co., Inc. v. Dana Corp.*
(2004) 34 Cal.4th 979, 22 Cal.Rptr.3d 352 ........ 11

*Spector v. Miller*
(1962) 199 Cal.App.2d 87, 18.Cal.Rptr 426 ........ 8

*Van Deusen v. Snead*
(1994) 247 Va. 324, 441 S.E.2d 207 ........ 8

**Statutes**

Business & Professional Code §17200 ........ 1, 11

Civil Code §1572 ........ 10

Civil Code §1573 ........ 10

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ........ 1

Federal Rules of Civil Procedure 9 ........ 11

Federal Rules of Civil Procedure 9(b) ........ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' Motion to Dismiss relies on the wrong law, selectively interprets the parties' agency agreement and ignores plaintiff's clear factual allegations in an effort to sidestep liability. Defendants' mistaken arguments should be rejected and the motion to dismiss denied.

## II. GOVERNING LEGAL STANDARD

In resolving a Rule 12(b)(6) motion, the court should construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the plaintiff can prove *any* set of facts to support a claim that would merit relief. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts to support a claim that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2L.Ed.2d 80 (1957). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990.)

## III. PLAINTIFF'S ALLEGATIONS

Continental's Complaint states five separate causes of action against defendants: (1) breach of written contract, (2) breach of fiduciary duty; (3) fraud, (4) negligent misrepresentation, and (5) statutory unfair competition (B&P Code §17200.) The first two claims are asserted only against Mundo Travel; the last three claims charge all defendants. The Complaint is based on the underlying pleaded facts:

### 1. Underlying Agency Relationship between the Parties

Continental and Mundo Travel both are parties to the Agent Reporting Agreement ("ARA") by virtue of each party's participation in the Airlines Reporting Corporation ("ARC"). ARC was created in 1984 by a consortium of domestic air carriers to function as a national clearinghouse and collection agent for transactions between the air carriers and accredited travel agents. (Complaint, ¶8.)

Kenney & Markowitz L.L.P.

{30417.301859 0119740.DOC}

1

PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CASE NO. 1:05-CV-01050-REC-LJO

Continental participates in ARC by virtue of signing an ARC Carrier Services Agreement which provides, among other things, that (1) ARC is authorized by way of a power of attorney to enter into contracts with travel agents on behalf of all its airline members collectively, and (2) each of ARC's airline members subscribe to the rules and regulations promulgated by ARC. Pursuant to the power of attorney, ARC, in turn, enters into the ARA with travel agencies on behalf of itself and its member airlines. An individual travel agent's assent to the terms of the ARA is reflected through the travel agent's execution of a "Memorandum of Agreement to the Airlines Reporting Corporation Agent Reporting Agreement" ("Memorandum") (Complaint, ¶9.) Thus, both sides of the principal/agency relationship – a member airline and a travel agent – are contractually connected through, and their relationship governed by, the terms of the ARA. A copy of the ARA, including the Memorandum signed by defendant Ivan Vallejo on behalf of defendant Mundo Travel Corporation, is attached to the Complaint as Exhibit A.

**2. Relevant Terms of the Parties' Agreements**

The agency nature of the parties' relationship is declared from the first sentence of the "Memorandum:"[2]

> The parties to this "Memorandum" . . . are the Agent identified on the obverse of this form [Mundo Travel Corporation], Airlines Reporting Corporation (ARC), and each carrier which is or may become a party to ARC's "Carrier Services Agreement" and has *appointed said Agent as its agent for the issuance of ARC traffic documents in connection with sales of air transportation and-or ancillary services*. . . . Each of the parties hereby agrees to be bound by the terms of ARC's "Agent Reporting Agreement" . . . [Emphasis added.]

The ARA continues to define the relationship in **Section I: Purpose and Scope**, which provides, in part:

> B. This agreement establishes a *principal-agent relationship* between the Agent and appointing carriers, and governs the terms and conditions under which the Agent is authorized to issue ARC traffic documents at or through its authorized agency locations in the United States . . .[3] [Emphasis added.]

[2] Complaint, Exhibit A, first page (unnumbered.)

[3] Complaint, Exhibit A, "Page 1."

Kenney & Markowitz L.L.P.

{30417.301859 0119740.DOC} 2

PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CASE NO. 1:05-CV-01050-REC-LJO

The ARA's "**Section VII: Agent's Authority, General Rights and Obligations**" includes the following terms governing the scope of the Agent's activities on behalf of the appointing air carrier, such as Continental in this instance:

> A. The Agent shall at all times maintain ethical standards of business in the conduct of the agency and in its dealing with its clients, the public and the carrier.
>
> B. The Agent shall designate a bank account for the benefit of ARC and the carrier for deposit of (1) the proceeds of other sales of air transportation and ancillary services for which ARC traffic documents were issued, and (2) such funds as may be required to pay any other amount which ARC is authorized to draft from the account. *The agent recognizes that the proceeds of the sales, less the Agent's commissions, on these ARC traffic documents are the property of the carrier and shall be held in trust until accounted for to the carrier*. [Emphasis added.]
>
> * * *
>
> F. The Agent shall deliver to its clients the proper forms of ARC traffic documents and/or supporting documentation as authorized from time to time by the carrier. *The information shown on any such documents shall be in accordance with the applicable rules, regulations and instructions furnished to the Agent by . . . the carrier.* [Emphasis added.]
>
> * * *
>
> H. The Agent shall comply with all instructions of the carrier, and shall make no representation not previously authorized by the carrier. . .[4]

Further to the Agent's duties to its air carrier principal, **Section VIII.A.7.** states,

> All monies and credit card billing documents, less applicable commission, collected by the Agent for sales hereunder *are property of the carriers, and shall be held in trust by the Agent* until satisfactorily accounted for to the carriers. [Emphasis added.]

Finally, the ARA's effectiveness as between the air carrier and the agent are spelled out in Section XXVIII of the ARA:

> B. This agreement shall be effective as between the Agent and each carrier which has . . . issued an appointment to the Agent. This agreement shall have the same force and effect between the carrier and the Agent as though they were both named in, and had subscribed their names to, the memorandum on the date appearing hereon.[5]

[4] Complaint, Exhibit A, "Page 7."

[5] Complaint, Exhibit A, "Page 25."

Kenney & Markowitz L.L.P.

### 3. Defendants' Wrongful Acts

The Complaint alleges that Continental's "Booking and Ticketing Policy specifically prohibits ticketing violations known as Point Beyond Ticketing or Throwaway Ticketing." (Complaint, ¶24.) "Point beyond ticketing," also known as "throwaway ticketing," is where a passenger wishes to travel nonstop to a particular destination but does pay a nonstop fare to do so. A nonstop fare, which provides more convenience to the customer, usually costs more than the fare for a longer itinerary in which there are stop-overs or connecting flights to the final destination listed on the itinerary. In the case at hand, Mundo Travel issued numerous tickets in violation of this rule, where the customer was listed on a flight with a final destination to which the customer never intended to fly but instead, departed at the stop-over. Ticketing a "point beyond" itinerary is prohibited by Continental's Booking and Ticketing Policy as it circumvents the fare rules in place by the airline, all of which are published and known by the travel agency. (Complaint, ¶12.)

After Continental was alerted to a possible "point beyond" itinerary for a Mundo Travel customer, it examined other recent Mundo Travel bookings and found at least 288 itineraries over a three-month period that violated Continental's Booking and Ticketing Policy. (Complaint, ¶13.) Mundo Travel was not authorized by Continental to issue travel documents that did not conform to the carrier's Booking and Ticketing Policy. By issuing unauthorized travel documents, defendants violated their agency responsibilities under the ARA and breached many terms of that agreement, as demonstrated by both the pleadings and the agreement itself, which is attached to the Complaint. (Complaint, ¶¶ 13, 14.)

## IV. FIRST CLAIM: BREACH OF WRITTEN AGENCY AGREEMENT

### A. Continental's Booking and Ticketing Policy Is Inextricably Part of the Parties' Contractual Relationship

Mundo Travel does not dispute that, in 2005, it issued travel documents with "point beyond" itineraries, and that by doing so it acted contrary to Continental's Booking and Ticketing Policy. Mundo Travel argues instead that its actions did not violate the ARA because that

agreement "does not govern carrier tariff-related matters such as point-beyond ticketing." Defendant cites to Section I.C. of the ARA, which states:

> This agreement does not constitute the entire agreement between the Agent and a carrier, but is specifically limited to the terms and conditions contained herein. This agreement does not, for example, address fares charged by the carrier; that is a matter between a carrier and the Agent.

Defendant's argument misses the point or intentionally avoids it. Through various provisions in the ARA, including but not limited to, Sections VII. F and H as referenced above, Mundo Travel explicitly covenanted to issue travel documents that were in "proper forms . . . as authorized by the carrier;" to "comply with all applicable rules, regulations and instructions of the carrier," and to "make no representation not previously authorized by the carrier."[6] Mundo Travel violated each of these agency obligations by issuing travel documents with "point beyond" itineraries, which were in derogation of Continental's Booking and Ticketing Policy, an essential part of the ARA, with the end result to circumvent the rules the travel agent agrees to follow, including Continental's fare rules; hence, they were not authorized.[7]

Mundo Travel's cited cases are not illuminating. Both *In re Northwest Airlines Corp.*, 208 F.R.D. 174 (E.D. Mich. 2002) and *Republic Airlines, Inc. v. Civil Aeronautics Board*, 756 F.2d 1304 (8th Cir. 1985) merely stand for a proposition that is not in dispute: that the ARA does not *itself* establish the fares to be charged by any particular member carrier. Neither case concerns, nor does it nullify, Mundo Travel's contractual obligation, established in the ARA, to abide by Continental's tariffs and ticketing policies when issuing travel documents. Since all the elements of the breach of contract claim have been sufficiently alleged, the motion to dismiss this count should be denied.

---

6 Complaint, Exhibit "A," Section VII.H, "page 7."

7 Mundo Travel also would have the Court believe the only term of the ARA in question here is the requirement that Agents "at all times maintain ethical standards of business." To be sure, defendants certainly breached the "ethical" requirement, but that is not the only basis for Continental's claims.

Kenney & Markowitz L.L.P.

{30417.301859 0119740.DOC} 5

PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CASE NO. 1:05-CV-01050-REC-LJO

**B. The ARA's Choice of Law Provision Is Inapplicable and Irrelevant**

Section XXXI of the ARA states, "This Agreement shall be construed in accordance with, and governed by, the laws of the Commonwealth of Virginia." Mundo Travel therefore makes the facile argument that Virginia law governs all of the claims in this case, and particularly the first claim for breach of written agency agreement (the ARA). Defendant does not say why a choice of law matters in this case, but this is an academic quibble. The ARA's choice-of-law clause is unenforceable in this particular lawsuit, and at best arguably may pertain only to the first claim, for breach of the ARA.

In diversity cases, of which this is one, federal courts must apply the conflict-of-law principles of the forum state. *Estate of Darulis v. Garate*, 401 F.3d 1060 (9th Cir. 2005). In turn, a California court determining the enforceability of an arm's-length, contractual choice-of-law provision first must determine whether (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry; the court need not enforce the parties' choice of law. *Nedlloyd Lines B.V. v. Superior Court (Seawinds Ltd.)* (1992) 3 Cal.4th 459, 465-66, 11 Cal.Rptr.2d 330, 834 P.2d 1148.

If, however, either test is met, further analysis is needed to determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court should enforce the parties' choice of law. If there is a fundamental conflict with California law, the court then must further determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. If so, the choice-of-law provision will not be enforced. *Nedlloyd Lines B.V. v. Superior Court, supra.* Here, no such further analysis is required because the ARA's selection of Virginia law does not pass muster under either the "substantial relationship" or "reasonable basis" tests. Therefore, the contractual choice-of-law clause is irrelevant and unenforceable as to all of Continental's claims against defendants.

Virginia has *no* relationship, let alone a "substantial" one, to the states where the parties are domiciled: Mundo Travel is located in Fresno, California, while Continental, which is a Delaware corporation, has its corporate headquarters in Houston, Texas. Virginia law obviously

was invoked in the ARA because the Airline Reporting Corporation is based in Arlington, Virginia. ARC, in turn, simply is a national clearinghouse that was created to facilitate the financial and principal/agency transactions between airlines and appointed travel agents. In fact, ARC has been held *not* to be a "real and substantial party" for purposes of diversity jurisdiction even in a lawsuit initiated by ARC, on behalf of its member airlines, against a delinquent travel agent. *Airlines Reporting Corporation v. S and N Travel, Inc.*, 58 F.3d 857 (2nd Cir. 1995) (citizenship of the member air carriers, rather than that of ARC, controlled for the purposes of diversity jurisdiction.) In short, Virginia law is completely irrelevant to this lawsuit directly between an air carrier domiciled in Texas and a California travel agent. The ARA's "choice of law" provision therefore can and should be ignored.

At best, the ARA's choice-of-law clause explicitly invokes Virginia law only as to the contractual interpretation of the ARA: "This Agreement *shall be construed* in accordance with, and governed by, the laws of the Commonwealth of Virginia." ARA, Section XXXI (emphasis added.) A separate choice-of-law inquiry must be made with respect to each issue in a case. *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). Since the choice-of-law provision by its terms is limited to the contractual interpretation of the ARA, it has no relevance to Continental's tort claims against defendants.

**C. There Is No Reason to "Construe The ARA Against Continental"**

Finally, Mundo Travel seizes on ARC's entering into the ARA on behalf of Continental and other member airlines as justification for the illogical conclusion that Continental therefore is the "drafter" of the ARA, and "any ambiguity in the ARA is to be strictly interpreted against Continental's interpretation." This is another straw-man argument, since Mundo Travel does not point to any alleged "ambiguity" in the ARA material to this dispute. At any rate, defendant's position is, again, incorrect.

There is nothing in the appearance or substance of the ARA to indicate that Continental drafted this document. In fact, all signs are to the contrary: Each page of the ARA notes, at the bottom margin, "ARC Form 030505-02" (or -03, -15, etc., depending on the applicable generation.) Further, and as Mundo Travel's own authority notes, the ARA was drafted by ARC.

*In re Northwest Airlines Corp.*, 208 F.R.D. at 182. Mundo Travel cites no cases, from any jurisdiction, supporting its argument that Continental should be considered a "drafter" of the ARA merely because member airlines enter into the ARA through an intermediary, ARC. Thus, defendant's motion to dismiss the first claim, for breach of contract, should be denied.

## V. SECOND CLAIM: BREACH OF FIDUCIARY DUTY

Defendants' attack on the second claim, for breach of fiduciary duty, argues, "The [ARA] does not create a fiduciary relationship" between the parties "relating to tariff rules." (Defendants' brief, p. 6.) This proposition is nonsense, regardless whether California or Virginia law is applied.[8]

First, it is hornbook law that the creation of a principal-agent relationship necessarily creates a fiduciary duty from the agent to its principal. *Spector v. Miller* (1962) 199 Cal.App.2d 87, 95, 18.Cal.Rptr. 426; *Van Deusen v. Snead* (1994) 247 Va. 324, 331, 441 S.E.2d 207. Indeed, the ARA explicitly creates an agency relationship as between a travel agent and an air carrier. The very first sentence in the "Memorandum of Agreement" says as much, as do the several sections of the ARA quoted above. As a Virginia bankruptcy court observed in *In re: Bishop*, 276 B.R. 737, 743 (W.D. Va 2001):

> It is clear that the Agent Reporting Agreement between ARC and its accredited travel agents creates fiduciary obligations on the part of those agents in favor of ARC and its member carriers. . . Considering the ability to create large obligations on the part of the carriers which accredited travel agent status conferred, such fiduciary obligations are entirely reasonable and in accord with the duties of loyalty, honesty, compliance with instructions, due care and good faith which the law generally imposes upon agents in favor of their principals . . .

*In accord*: *People v. Cook* (1959) 167 Cal.App.2d 247, 249-250, 334 P.2d 307 (travel agent's actions supported conviction for embezzlement where agent breached fiduciary duty to air carrier by appropriating money collected on tickets sold for travel on air carrier.)

[8] Defendants' mistaken argument that Virginia law applies carries over as to each claim in the Complaint. Even though, as discussed above, defendants are incorrect and Virginia law is irrelevant, the law of both California and Virginia is addressed *infra* to eliminate any doubt as to the weaknesses in defendants' arguments.

None of the cases cited by defendants supports the proposition that "numerous courts have held that no fiduciary relationship is established by the ARA."[9] First, all of defendants' cases concern the relationship between a travel agent and ARC, not a travel agent and an air carrier. Further, defendants' cases do not support their arguments. In *Airlines Reporting Corporation v. Private Label Travel*, 1993 WL 271470 (N.D. Ill. 1993) the court merely held that the complaint in that particular case did not allege sufficient facts to support a claim for breach of fiduciary duty, *not* that no such action existed. Similarly, the court in *Airlines Reporting Corp. v. Pishvaian, supra* recognized as a "starting point" that the ARA *did* establish a fiduciary duty on the part of the defendant travel agent toward ARC to hold blank ticket stock in trust, but held that there were triable issues of fact concerning whether the agent's sole officer and director had acted in good faith. The New York bankruptcy court in *In re Vinogradova*, 270 B.R. 159 (S.D. N.Y. 2001) similarly recognized that the ARA does create some fiduciary duties as between a travel agent and ARC, but held that the plaintiff simply had failed to prove its case.

In contrast, and as cited above, a Virginia bankruptcy court ruled in *In re Bishop, supra*[10], that the ARA created "fiduciary duties in favor of ARC *and its member carriers*." (Emphasis added.) Defendants' argument to the contrary is mistaken.

If it is Mundo Travel's contention that the contractual *scope* of its fiduciary duty to Continental did not encompass abiding by Continental's fare rules and tariffs, defendant still is in error. The scope of Mundo Travel's agency is spelled out in the ARA, Section VII "Agent's Authority, General Rights and Obligations," which explicitly requires the Agent to "comply with all instructions of the carrier, and . . . make no representation not previously authorized by the carrier." Further, through the ARA, Mundo Travel acknowledged that it "held in trust" the proceeds of the sales of air transportation. Defendant violated this trust by manipulating the itineraries in various travel documents so as to deprive Continental of ticket sale proceeds to

9 Two of the three cases also are from various jurisdictions other than Virginia, despite defendants' insistence that only Virginia law applies here.

10 A case not cited by defendants.

Kenney & Markowitz L.L.P.

{30417.301859 0119740.DOC}
9
PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CASE NO. 1:05-CV-01050-REC-LJO

which it otherwise would be entitled. Defendant's motion to dismiss the second claim therefore should also be denied.

## VI. THIRD CLAIM: FRAUD

There is no valid basis for defendants' complaint that plaintiffs have not pleaded fraud with sufficient particularity. (Defendants' brief, p. 9.) Under California law, "actual fraud" includes "the suggestion, as a fact, of that which is not true . . ." and "the suppression of that which is true." (Civil Code §1572.) Similarly, "constructive fraud" consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another to his prejudice. . ." (Civil Code §1573.) Virginia law is in accord. Under Virginia law the elements of actual fraud are "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Prospect Development Co., Inc. v. Bershader*, 258 Va. 75, 85-86, 515 S.E.2d 291 (Va. 1999.) "[T]he elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Id.*

Regardless which state's definition of fraud is applied, until Rule 9(b) of the Federal Rules of Civil Procedure, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Here, the Complaint specifically identifies who made the representations (Erik Vallejo, through his company Mundo Travel - ¶¶ 33-35), to whom they were made (Continental - ¶¶ 34, 35), the medium (travel documents - ¶¶ 34, 35), and dates (2005 - ¶¶ 11-14, and 34) and the nature of the misrepresentations (improper fares and itineraries stated in the travel documents - ¶¶ 34, 35.) Defendants also complain that "Continental fails to state any basis for these assertions," but the proof *behind* a fraud claim is not one of the "required elements" of this cause of action. Nonetheless, the basis is also in the allegation that over a short time, Continental located 288 itineraries that were ticketed by Mundo Travel in violation of Continental's throwaway ticketing

policy. (¶ 13). Continental has pleaded the necessary *facts* to state a prima facie case of fraud under the provisions of Rule 9, which requires only that the "circumstances of the fraud" be stated with particularity but malice, intent, knowledge, and other condition of mind may be averred generally. Defendants' motion to dismiss the fraud claim therefore should be denied.

## VII. FIFTH CLAIM: STATUTORY UNFAIR COMPETITION (B&P CODE §17200)

Again relying on inapplicable Virginia law, defendants contend that the fifth claim, for violation of Business & Professions Code §17200, is insufficient merely because of its reference to a California statute. But as discussed above, Virginia law is inapplicable to this claim. Mundo Travel is a California travel agent that is subject to the California statute. Further, even if Virginia law were to be applied, Virginia also recognizes a claim for "unfair competition." *See, e.g., M-CAM v. D'Agostino*, Slip Copy, 2005 WL 2123400, W.D.Va. (2005). Accordingly, this claim is applicable and has been sufficiently pled to withstand a motion to dismiss.

## VIII. THE "ECONOMIC LOSS RULE" DOES NOT APPLY TO CONTINENTAL'S TORT CLAIMS

Defendants' final argument is that Continental's claims for fraud, negligent misrepresentation and breach of fiduciary duty are barred by the "economic loss rule." Not so.

Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits – without any claim of personal injury or damages to other property . . ." *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 482, 127 Cal.Rptr.2d 614, 58 P.3d 450. Simply stated, the economic loss rule provides: " ' "[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." ' *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 988, 22 Cal.Rptr.3d 352 (citation omitted.)

But this case is not about the sale of a "product;" it concerns the sale of *services* for air transportation. A contract for the performance of services carries with it both the reasonable expectation and an independent, implied-at-law promise that it will be performed with reasonable care. The economic loss rule does not apply to actions based on the defendant's failure to properly

Kenney & Markowitz L.L.P.

perform the services contemplated by the parties' written agreement. *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 69 Cal.Rptr.2d 466. Virginia law is in accord. *See, e.g., Bailey v. Grass*, 2004 WL 3000944, Va. Cir. Ct., (2004) (economic loss rule did not apply to action arising out of the sale of a business for the provision of transportation services to disabled customers.) Moreover, the economic loss doctrine could be the basis of an affirmative defense, but it is not grounds for dismissing the well-pled tort claims at issue. Thus, the motion to dismiss these counts should similarly be denied.

## IX. CONCLUSION

For the foregoing reasons, plaintiff Continental Airlines, Inc. respectfully requests that defendants' motion to dismiss be denied in its entirety, and that the court award the plaintiff such further and other relief as it deems appropriate, including its reasonable costs and attorneys' fees.

DATED: December 1, 2005

**KENNEY & MARKOWITZ L.L.P.**

By: ______________________
STEPHEN C. KENNEY
KYMBERLY E. SPEER
Attorneys for Plaintiff
CONTINENTAL AIRLINES, INC.