IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC., | ) | No. CV-F-05-1050 REC LJO |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTION TO DISMISS |
| | ) | PLAINTIFF'S COMPLAINT |
| MUNDO TRAVEL CORPORATION, a | ) | PURSUANT TO FED. R. CIV. P. |
| corporation, and ERIK VALLEJO, | ) | 12(b)(6) AND DIRECTING |
| | ) | PLAINTIFF TO FILE AN |
| Defendants. | ) | AMENDED COMPLAINT. |
| | ) | |
| _____ | ) | (Doc. 10) |

On December 12, 2005, the Court heard Defendants'
Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ.
P. 12(b)(6) (the "Motion").  Upon due consideration of the
written and oral arguments of the parties and the record herein,
the Court GRANTS the Motion in part and DENIES it in part.

**I.   Factual Background**

Plaintiff Continental Airlines ("Continental") is a member
of a consortium of domestic air carriers called the Airlines
Reporting Corporation (the "ARC"), headquartered in Arlington,
Virginia.  ARC formed in 1984 to function as a clearinghouse and

a collection agent for transactions between airlines and travel
agents who sell their services.

Continental, along with other airlines, has signed an ARC
Carrier Services Agreement that gives ARC power of attorney to
enter into contracts with travel agents on Continental's behalf.
Travel agents wishing to issue Continental tickets through the
ARC must execute a "Memorandum of Agreement to the Airlines
Reporting Corporation Agent Reporting Agreement" (the
"Memorandum") that obligates them to the terms of the Agent
Reporting Agreement (the "ARA").

A travel agent who executes the Memorandum thereby becomes
the carrier's "agent for the issuance of ARC traffic documents."
Pevzner Decl. Ex. B at 1.  ARC traffic documents, defined on page
2 of the ARA, include tickets, tour orders, and other documents
that ARC provides to the agent.  Pevzner Decl. Ex. B.

The ARA provides, in Section I.C. on page 1, that it "does
not constitute the entire agreement between the Agent and a
carrier, but is specifically limited to the terms and conditions
contained herein."  Id.  The second sentence of Section I.C
provides, "This agreement does not, for example, address fares
charged by the carrier; that is a matter between a carrier and
the Agent."  Pevzner Decl. Ex. B.

Though the ARA's terms obligate the agent who signs the
Memorandum to meet a variety of requirements related to the

1   issuance of travel documents.  Section VII,[1] on page 7 of the

2   ARA, contains provisions that set forth the "Agent's Authority,

3   General Rights and Obligations."  Pevzner Decl. Ex. B.  Section

4   VII.A requires the agent to "at all times maintain ethical

5   standards of business."  Id.  Section VII.F requires that the

6   agent ensure that information shown on ARC traffic documents

7   follow the carrier's rules and be in the proper form.  Id.  Under

8   Section VII.H, the agent must "comply with all instructions of

9   the carrier, and . . . make no representation not previously

---

[1]Section VII provides, in relevant part,

> A.   The Agent shall at all times maintain ethical standards of business in the conduct of the agency and in its dealing with its clients, the public and the carrier.
>
> . . .
>
> F.   The Agent shall deliver to its clients the proper forms of ARC traffic documents and/or supporting documentation as authorized from time to time by the carrier.  The information shown on any such documents shall be in accordance with the applicable rules, regulations and instructions furnished to the Agent by ARC by specific instruction or in the *Industry Agents' Handbook*, and by the carrier.
>
> . . .
>
> H.   The Agent shall comply with all instructions of the carrier, and shall make no representation not previously authorized by the carrier.  The Agent shall deliver to the carrier such specific instructions, requests, or particulars in connection with a client or the transportation as may be proper to enable the carrier to render efficient service to its passengers.

Pevzner Decl. Ex. B.

3

authorized by the carrier."  Id.  Defendant Erik Vallejo,
president and CEO of Mundo, signed a Memorandum making Mundo an
agent of Continental pursuant to the ARA that went into effect on
May 5, 2003.  Id. at 1.

Continental alleges that between March and May of 2005,
Defendants Mr. Vallejo and Mundo Travel Corporation (collectively
"Mundo") engaged in a practice called "point-beyond ticketing."
Also known as "throwaway ticketing," this practice comes into
play when a passenger wishes to fly nonstop to a particular city
that serves as a transfer point for a flight to another location.
A nonstop fare usually costs more than a flight that involves a
stop-over.  Consequently, a passenger who buys a ticket for a
flight to a "point beyond" his desired destination can receive a
lower fare for a nonstop flight by simply terminating his trip at
the stop-over location.  It is undisputed, for the purpose of
this Motion, that fare rules published in Continental's Booking
and Ticketing Policy (the "Policy") forbid point-beyond
ticketing.

Continental alleges that Mundo booked 288 itineraries that
violated the Policy.  By booking the tickets, Continental
asserts, Mundo represented that the itineraries complied with the
Policy, that the passengers intended to travel to the final
stated destination, and that the passengers paid a fare that
complied with the Policy.  Continental claims that Mundo knew
that the itineraries violated the Policy, or at least asserted
that the itineraries complied without a reasonable ground to

4

1 believe so.

2 **II.  Procedural History**

3      On August 15, 2005, Continental filed a complaint (the

4 "Complaint") in this court.  On October 7, 2005, Mundo filed this

5 Motion, along with the a declaration of Alex F. Pevzner (Pevzner

6 Decl.) and exhibits in support of the Motion.  On October 17,

7 2005, Continental filed its opposition.  Continental submitted an

8 amended opposition on December 2, 2005, to correct a clerical

9 error.  On December 2, 2005, Mundo filed its reply.

10 **III. Discussion**

11      **A.   Legal Standard**

12      Dismissal of a complaint pursuant to Rule 12(b)(6) is proper

13 if "it appears beyond doubt that the plaintiff can prove no set

14 of facts in support of his claim which would entitle him to

15 relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2

16 L. Ed. 2d 80 (1957).  In testing the sufficiency of a complaint

17 against a Rule 12(b)(6) challenge, a court must "accept all

18 material allegations in the complaint as true and construe them

19 in the light most favorable to the plaintiff."  <u>N. Star Int'l v.</u>

20 <u>Arizona Corp. Comm'n</u>, 720 F.2d 578, 580 (9th Cir. 1983).  The

21 Court need not, however, "accept legal conclusions cast in the

22 form of factual allegations if those conclusions cannot

23 reasonably be drawn from the facts alleged."  <u>Clegg v. Cult</u>

24 <u>Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).

25      A complaint may be dismissed as a matter of law if there is

26 a lack of a cognizable legal theory or if there are insufficient

facts alleged under a cognizable legal theory.  <u>Balistreri v.</u>
<u>Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  The
Court must determine whether or not it appears to a certainty
under existing law that no relief can be granted under any set of
facts that might be proved in support of a plaintiff's claims.
<u>De La Crux v. Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978), <u>cert.</u>
<u>denied</u>, 441 U.S. 965, 99 S. Ct. 2416, 60 L. Ed. 2d 1072 (1979).
The Court may consider the complaint itself along with any
material properly considered as part of the complaint.
<u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542,
1555 n. 19 (9th Cir. 1989).  Where the complaint fails to state a
claim on which relief can be granted, leave to amend "shall be
freely given when justice so requires."  Fed. R. Civ. P. 15(a);
<u>Allen v. Beverly Hills</u>, 911 F.2d 367, 373 (9th Cir. 1990).

**B.   Applicable Law**

**1.   Validity of Choice-of-Law Clause**

As a threshold matter, the parties dispute what law governs
Continental's claims.  Mundo claims that Virginia law applies to
each of the claims.  Continental asserts that Virginia law
applies, if at all, only to its first claim for breach of
contract.

Federal courts apply the choice-of-law rules of the state in
which they sit.  <u>Shannon-Vail Five, Inc. v. Bunch</u>, 270 F.3d 1207,
1210 (9th Cir. 2001).  California courts' approach to determining
whether to enforce an arm's-length contractual choice-of-law
provision reflects a strong policy in favor of enforcement of

such provisions.[2]  <u>Nedlloyd Lines B.V. v. Super. Ct.</u>, 3 Cal. 4th 459, 464-65 (1992).  First, a court must determine either: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law."  <u>Id.</u> at 466.  If neither test is met, the Court need not enforce the parties' choice of law.  <u>Id.</u>  If either test is met, the chosen state's law applies unless it is "contrary to a *fundamental* policy of California."  <u>Id.</u> (emphasis in original).

Section XXXI, on page 26 of the ARA, provides, "This Agreement shall be construed in accordance with, and governed by, the laws of the Commonwealth of Virginia."  Pevzner Decl. Ex. B. Continental argues that the Court should not enforce the choice-of-law provision because Virginia lacks a sufficient relationship to the parties or transaction here.  Continental argues that, even though ARC's principal place of business is in Virginia, ARC "simply is a national clearinghouse" that facilitates transactions between airlines and travel agents.  Opp'n at 7:2. Continental points out that caselaw has established that ARC is not a "real and substantial party" for purposes of diversity jurisdiction.  <u>Airlines Reporting Corp. v. S & N Travel</u>, 58 F.3d

---

[2]As stated *infra*, the Virginia choice-of-law clause defines the law to be used to interpret the entire contract, including the choice-of-law clause itself.  <u>See</u> <u>Nedlloyd Lines B.V. v. Super. Ct.</u>, 3 Cal. 4th 459, 469 n. 7 (1992).  Because the parties do not discuss Virginia's choice-of-law rules nor argue that they differ from California's, the Court applies California law.  <u>See id.</u>; <u>Discover Bank v. Super. Ct.</u>, 36 Cal. 4th 148, 174 (2005).

857, 861-62 (2d Cir. 1995).  This implies, Continental argues,
that Virginia lacks a substantial relationship to the parties and
the transaction.

     The ARC's absence from the present action does not on its
own preclude a substantial relationship between Virginia and the
parties or transaction.  The "substantial relationship" analysis
focuses on the parties to the contract, not the parties to the
action.  Hambrecht & Quist Venture Partners v. Am. Med. Int'l, 38
Cal. App. 4th 1532, 1546 (1995) ("If one of the contracting
parties is incorporated in the chosen state, then all of the
contracting parties have a substantial relationship to that state
for choice-of-law purposes." (citing Nedlloyd, 3 Cal. 4th at
467)).  If one party resides in the chosen state, that state has
a substantial relationship to all of the parties.  Hughes Elecs.
Corp. v. Citibank Del., 120 Cal. App. 4th 251, 258 (2004). It is
undisputed that ARC's principal place of business is in Virginia.
Opp'n at 7:1-2.

     Continental does not contend that ARC is not a party to the
contract.  In fact, the front of the Memorandum states, "The
parties to this 'Memorandum of Agreement to the Airlines
Reporting Corporation Agent Reporting Agreement' are the Agent
identified on the obverse of this form, ***Airlines Reporting
Corporation (ARC)***, and each carrier . . . ."  Pevzner Decl. Ex.
B.  ARC is not merely a "straw man" for an agreement between
Continental and Mundo; ARC itself has undertaken obligations
under the ARA.  Section VIII.A.5, on page 8 of the ARA, sets

forth duties of the ARC: "Upon receipt of the weekly sales report, ARC shall generate a confirmation number for the report, and transmit this confirmation number to the agency location from which the report was submitted." Pevzner Decl. Ex. B.  Because a party to the ARA resides in Virginia, the "chosen state has a substantial relationship to the parties."  Pevzner Decl. Ex. B.

Continental does not contend that the choice-of-law clause is contrary to any of California's policy interests. Accordingly, the Court will enforce the ARA's choice-of-law clause.

### 2.   Scope of Choice-of-Law Clause

A choice-of-law clause like the one in the ARA applies to "all causes of action arising from or related to" the contract. Nedlloyd, 3 Cal. 4th at 468.  In Nedlloyd, the Supreme Court of California considered a choice-of-law clause nearly identical to that at issue here.  The clause in that case read, "This agreement shall be governed by and construed in accordance with Hong Kong law . . . ."  Id. at 463.  The court decided that a rational businessperson establishing a contractual relationship would intend to resolve all disputes arising out of the contract or relationship under the law of one chosen jurisdiction.  Id. at 469.  No rational business entity would intend to subject itself to a dispute involving the laws of multiple jurisdictions or to face "a protracted litigation battle" concerning which law to apply to each issue.  Id. at 469-70.  Consequently, the court read the phrase "governed by" broadly to "reflect the parties

9

1  clear contemplation that 'the agreement' is to be completely and

2  absolutely controlled" by the law of the chosen jurisdiction.

3  Id. at 469.  The court held that

4           a valid choice-of-law clause, which provides
             that a specified body of law 'governs' the
5           'agreement' between the parties, encompasses
             all causes of action arising from or related
6           to that agreement, regardless of how they are
             characterized, including tortious breaches of
7           duties emanating from the agreement or the
             legal relationships it creates.
8
   Id. at 470.  The court concluded that a fiduciary duty cause of
9
   action that arose from a relationship that the agreement created
10
   was subject to the law that the agreement specified.  Id. at 469.
11
   The Court holds that Virginia law governs all of Continental's
12
   causes of action "arising from or related to" the ARA.
13
   **C.   First Cause of Action:  Breach of Written Contract**
14
        Continental claims that Mundo is liable for violating the
15
   Policy by issuing travel documents with point-beyond itineraries.
16
   The parties do not dispute, for the purposes of the Motion,
17
   whether Mundo's alleged conduct contravenes the terms of the
18
   Policy.  The issue is whether Mundo promised to abide by the
19
   Policy when it signed the ARA.[3]
20
        Because the breach of contract claims arise from the ARA,
21
   the Court applies Virginia law.  See Nedlloyd, 3 Cal. 4th at 470.
22

23   _____

24       [3]At oral argument, Continental's counsel urged that the breach
     of the Policy itself gave rise to a breach of contract claim,
25   regardless of the scope of the ARA.  Continental has alleged only
     that Mundo "violated Continental's [Policy] on at least 288
26   occasions."  Compl. at ¶ 25.  Continental has not alleged any facts
     that imply that the Policy was itself an enforceable contract.

                                  10

1   When the terms of a contract are clear and unambiguous, courts
2   should interpret them according to their plain meaning.  <u>Golding</u>
3   <u>v. Floyd</u>, 261 Va. 190, 192 (2001).  "'The guiding light . . . is
4   the intention of the parties as expressed by them in the words
5   they have used, and courts are bound to say that the parties
6   intended what the written instrument plainly declares.'"  <u>Id.</u>
7   (quoting <u>Magann Corp. v. Elec. Works</u>, 203 Va. 259, 264 (1962)).

8       Where a court considers contractual documents beyond the
9   face of the complaint in the context of a motion to dismiss for
10  failure to state a claim, it should "strive to resolve any
11  contractual ambiguities in [the nonmoving party's] favor."  <u>Int'l</u>
12  <u>Audiotext Network, Inc. v. AT&T</u>, 62 F.3d 69, 72 (2d Cir. 1995).
13  "[T]he construction of ambiguous contract provisions is a factual
14  determination that precludes dismissal on a motion for failure to
15  state a claim."  <u>Martin Marietta Corp. v. Int'l Telecomms.</u>
16  <u>Satelite Org.</u>, 991 F.2d 94, 97 (4th Cir. 1992).

17      Under Virginia law, a court can determine the meaning of a
18  contract as a matter of law "when a written contract is clear and
19  unambiguous."  <u>Nehi Bottling Co. v. All-American Bottling Corp.</u>,
20  8 F.3d 157, 161 (4th Cir. 1993).  The question whether a contract
21  is ambiguous is a legal question for the Court.  <u>Id.</u>  The Supreme
22  Court of Virginia has defined ambiguity as "'the condition of
23  admitting of two or more meanings, of being understood in more
24  than one way, or of referring to two or more things at the same
25  time.'"  <u>Id.</u> (quoting <u>Mgmt. Enters., Inc. v. Thorncroft Co.</u>, 243
26  Va. 469, 472 (1992)).

1    Mundo alleges that the ARA "specifically states that it does

2    not govern tariffs" such as Continental's Policy regarding point-

3    beyond ticketing.  Reply at 3:17-19.  Mundo argues that

4    Continental's claim is barred by Section I.C of the ARA, which

5    appears on page 1: "This agreement does not constitute the entire

6    agreement between the Agent and a carrier, but is specifically

7    limited to the terms and conditions contained herein.  This

8    agreement does not, for example, address fares charged by the

9    carrier; that is a matter between a carrier and the Agent."

10   Pevzner Decl. Ex. B.  Mundo argues that this passage precludes

11   the finding of a contract regarding fares or fare-related

12   tariffs, such as the Policy, arising out of the ARA.[4]

13   Mundo interprets Continental's Policy regarding point-beyond

14   ticketing to fall under the excluded category of "fares charged

15   by the carrier."  Continental does not appear to dispute that the

16

17   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

         [4]Mundo also cites in support of its position Section I.B., on
     page 1 of the ARA:

18

19           This agreement establishes a principal-agent
             relationship between the Agent and appointing
             carriers, and governs the terms and conditions

20           under which the Agent is authorized to issue
             ARC traffic documents at or through its

21           authorized agency locations in the United
             States, and does not extend to the terms and

22           conditions under which the Agent is authorized
             to issue tickets and other forms that the

23           carrier may provide to the agent.

24   Pevzner Decl. Ex. B.  This provision does not support Mundo's
     interpretation because it merely distinguishes between documents

25   that ARC issues and documents that Continental provides.  The ARA
     only governs the terms and conditions regarding the former category

26   of documents.

                                      12

1   Policy is a rule about fares:  "Ticketing a 'point beyond'

2   itinerary is prohibited by Continental's Booking and Ticketing

3   Policy as it circumvents the fare rules in place by the airline,

4   all of which are published and known by the travel agency."

5   Opp'n at 4:10-13.

6        The language in Section I.C potentially excludes fare

7   agreements from the scope of the ARA by expressly stating that it

8   "does not . . . address fares charged by the carrier . . . ."

9   Pevzner Decl. Ex. B.  A reasonable reading of I.C would preclude

10  the ARA from governing any fare-related issues, such as whether

11  agents are permitted to engage in point-beyond ticketing.

12       In response, Continental points to Section VII.H, on page 7

13  of the ARA, which requires that Mundo "comply with all

14  instructions of the carrier, and shall make no representation not

15  previously authorized by the carrier."  Pevzner Decl. Ex. B.  The

16  language of Section VII.H, implies a broad duty on the part of

17  the agent to follow Continental's instructions.  Continental

18  alleges that the Policy instructs agents not to engage in point-

19  beyond ticketing.  The plain meaning of "all instructions of the

20  carrier" includes within its scope rules about point-beyond

21  ticketing listed in the Policy.  Such a reading of Section VII.H

22  entails that the ARA requires Mundo to comply with the Policy.

23       The ARA is ambiguous because it "admit[s] of two or more

24  meanings" with respect to whether it requires Mundo to comply

25  with the Policy.  See Nehi Bottling, 8 F.3d at 161.  At this

26  stage, it is inappropriate for the Court to construe these

1 conflicting provisions, which would entail a factual

2 determination. <u>Martin Marietta</u>, 991 F.2d at 97.  Continental has

3 alleged facts sufficient to support a breach of contract claim:

4 Mundo violated Section VII.H of the ARA, which required it to

5 comply with the instructions regarding point-beyond ticketing

6 that were embodied in the Policy.  Accordingly, Mundo's motion to

7 dismiss this cause of action is DENIED.

8     **D.   Second Cause of Action:  Breach of Fiduciary Duty**

9     Mundo contends that Continental cannot state a claim for

10 breach of fiduciary duty because Mundo lacked a duty to refrain

11 from the alleged conduct.  Mundo does not dispute that the ARA

12 establishes at least a limited fiduciary relationship with

13 Continental.  <u>See</u> <u>Airlines Reporting Corp. v. Bishop (In re</u>

14 <u>Bishop)</u>, 276 B.R. 737, 743 (Bankr. W.D. Va. 2001).

15     "A fiduciary relationship exists in all cases when special

16 confidence has been reposed in one who in equity and good

17 conscience is bound to act in good faith and with due regard for

18 the interests of the one reposing the confidence." <u>H-B Ltd.</u>

19 <u>P'ship v. Wimmer</u>, 220 Va. 176, 179 (1979).  "An agent is a

20 fiduciary with respect to the matters within the scope of his

21 agency."  <u>Van Deusen v. Snead</u>, 247 Va. 324, 331 (1994).  Here,

22 the scope of Mundo's agency is contractually defined by the ARA.

23 <u>See</u> Restatement (Second) of Agency § 26 (1958) (agency

24 relationship "can be created by written or spoken words or other

25 conduct").

26     Mundo claims that the ARA only creates a fiduciary duty with

14

respect to ARC traffic documents and the proceeds of sales of ARC traffic documents, citing Airlines Reporting Corp. v. Vinogradova (In re Vinogradova) 270 B.R. 159, 172-73 (Bankr. S.D.N.Y. 2001). In that case, the court addressed the extent to which ARC could recover from a travel agent alleged to have breached fiduciary duties toward ARC.  Id.  The court limited its inquiry to ARC traffic documents and proceeds from sales because these were the only respects in which ARC claimed that the agent owed it a fiduciary duty.  Id.  The court did not conduct its own reading of the ARA and determine that ARC's fiduciary relationship with an agent is limited to those duties.  Id.  Nor did that court have before it the issue the Court faces here of a travel agent's duties to the carrier, rather than the ARC.  Id.

    The Vinogradova court held that fiduciary duties under the ARA are tied to specific provisions of the agreement.  Id.; see also Bishop, 276 B.R. at 742-43.  This is in accord with the agency relationship that the ARA creates between the agent and the carrier.  Pevzner Ex. B at 1.  Continental has alleged that a provision of the ARA requires Mondo to follow all of Continental's instructions.  Continental has also alleged that Mundo has violated Continental's instructions contained in its Policy by issuing point-beyond tickets.  Continental has alleged an agency relationship, along with a duty that falls within the scope of that relationship.  Continental alleges that Mundo's conduct deprived it of revenue from fares for flights that Mundo booked.  Compl. at ¶ 26.  Construing Continental's allegations in

a light most favorable to it, they establish that Mundo's duty to abide by Continental's instructions obligates Mundo to protect Continental's interests in enforcing its fare rules, including the Policy.  Accordingly, Mundo's motion to dismiss this cause of action is DENIED.

### E.   Third Cause of Action:   Fraud

Continental's claims for fraud arise from the ARA because the ARA created the relationship with Mundo that gives rise to this cause of action.  See Nedlloyd, 3 Cal. 4th at 469.  The Court therefore applies Virginia law to this cause of action. The elements of a cause of action for actual fraud are "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[5]  Prospect Dev. Co. v. Bershader, 258 Va. 75, 85 (1999).

### 1.   Rule 9(b)

Mundo argues that the Court should dismiss this cause of action because Continental has failed to state it "with particularity" as Federal Rule of Civil Procedure 9(b) requires. To satisfy Rule 9(b) a complaint for fraud must "'state the time,

---

[5]Virginia law recognizes separate causes of action for actual fraud and for constructive fraud, the essence of which is negligent misrepresentation.  Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 557-59 (1998).  The Court recognizes Continental's third cause of action for fraud as a claim for actual fraud and its fourth cause of action for negligent misrepresentation as a claim for constructive fraud.

1  place, and specific content of the false representations as well

2  as the identities of the parties to the misrepresentation.'"

3  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).

4  This requirement is read in conjunction with Federal Rule of

5  Civil Procedure 8, which requires a "short and plain statement of

6  the claim," and calls for "simple, concise, and direct"

7  allegations.  See Michaels Bldg. Co. v. Ameritrust Co., N.A., 848

8  F.2d 674, 679 (6th Cir. 1988).

9      Mundo argues that Continental's claims are merely "bold

10  assertions" and that Continental fails to state the "'who, what,

11  where, and how' that serves as a basis for such assertions."

12  Mot. at 11:7-10.  Mundo points out that Continental states no

13  basis for its belief that Mundo knew that the "'passengers

14  mentioned above had no intention of traveling to the final

15  destination indicated on the travel documents . . . .'"  Mot. at

16  11:19-23 (quoting Compl. at ¶ 36).  Rule 9(b) provides that

17  "[m]alice, intent, knowledge, and other condition of mind of a

18  person may be averred generally" and are not subject to the

19  heightened pleading standard.  See Michaels Bldg., 848 F.2d at

20  680 n. 9 (Rule 9(b) requires "only that the 'circumstances' of

21  the fraud be pled with particularity, not the evidence of the

22  case.").  Thus, Continental need not plead a basis for its

23  averment regarding the passengers' states of mind or Mundo's

24  knowledge thereof.

25      Mundo also argues that the Complaint refers to dates, "but

26  fails to state the specific contents of representations made on

17

those dates and to specify what was false or misleading about such representations." Mot. at 11:17-19. In its Complaint, Continental avers that between March and May of 2005, Mundo, through Mr. Vallejo, made 288 representations in the form of bookings on Continental Airlines. Compl. at ¶ 34. The representation was that "the itineraries were legitimate" and that passengers "intended to travel to the final destination listed on the itinerary." Id. Mundo also represented to Continental "that the price paid by the passengers was in compliance with" the Policy. Id. at ¶ 35. Continental alleged the representations were false because Mundo knew that the passengers did not intend to travel to the stated destination and that the documents were issued to circumvent higher nonstop fares. Id. at 36.

Continental's allegations sufficiently specify the contents of Mundo's representations: each booking represented that the passenger intended to fly to a stated final destination. The representation was false because Mundo knew the passenger intended to terminate the trip at an intermediate destination. Pleading more details, such as the information about the individual passengers or their itineraries would not serve the purposes of Rule 9(b) and would instead contravene the policy furthered by Rule 8's requirement of "simple, concise, and direct" allegations. Continental has pled its claim for fraud in compliance with Rule 9(b).

1           **2.   Economic Loss Rule**

2        Mundo argues that Continental's claim for fraud is barred by

3   the economic loss rule.  The economic loss rule bars recovery in

4   tort for the breach of a duty that is founded solely on the basis

5   of a contract.  <u>Richmond Metro. Auth. v. McDevitt St. Bovis,</u>

6   <u>Inc.</u>, 256 Va. 553, 558 (1998).  Under this rule, a claim for

7   actual fraud does not arise from a representation relating to a

8   duty or obligation specifically required by contract.  <u>Id.</u> at 559

9   (contractor's misrepresentations that it had properly performed

10  under the contract did not subject it to a cause of action for

11  actual fraud and were only actionable under the contract).

12       The possibility of an eventual finding of a contract between

13  Mundo and Continental regarding the Policy does not merit

14  granting Mundo's motion to dismiss the fraud claim.  This is

15  because dismissal is only appropriate where "plaintiff can prove

16  no set of facts" to support the claim.  <u>Conley</u>, 355 U.S. 45-46.

17  Federal Rule of Civil Procedure 8(e)(2) specifically permits the

18  pleading of multiple claims "regardless of consistency."  <u>See</u>

19  <u>Isra Fruit, Ltd. v. Agrexco Agric. Exp. Co.</u>, 631 F. Supp. 984,

20  987 (S.D.N.Y. 1986) (holding that plaintiff's claims that a

21  contract was illegal under antitrust principles and, in the

22  alternative, that it was entitled to recover under the contract

23  survived a Rule 12(b)(6) motion).  Continental's contention that

24  the ARA requires Mundo to comply with the Policy is not grounds

25  to dismiss the fraud claim.  Under a provable set of facts, the

26  Court ultimately could conclude that the ARA does obligate Mundo

19

1  to follow the Policy.  <u>See</u> Pevzner Decl. Ex. B.  In such a case,

2  the economic loss rule would not bar the fraud claim.

3      Because Continental has sufficiently pled a claim for actual

4  fraud, Mundo's motion to dismiss this cause of action is DENIED.

5      **F.   Fourth Cause of Action:  Negligent Misrepresentation**

6      Under Virginia law, negligent misrepresentation is

7  actionable under the doctrine of constructive fraud.  <u>Richmond</u>

8  <u>Metro.</u>, 256 Va. at 559.  "Constructive fraud requires proof, also

9  by clear and convincing evidence, 'that a false representation of

10 a material fact was made innocently or negligently, and the

11 injured party was damaged as a result of . . . reliance upon the

12 misrepresentation.'"  <u>Id.</u> at 558.

13     Mundo contends that the economic loss rule bars

14 Continental's constructive fraud claim.  Mundo points out that

15 "[a] tort action cannot be based solely on a negligent breach of

16 contract."  <u>Id.</u> at 559.  The economic loss rule bars a

17 constructive fraud claim where the allegations "are nothing more

18 than allegations of negligent performance of contractual duties."

19 <u>Id.</u>

20     The purported existence of a contract that governs the

21 Policy does not preclude this claim.  For the reasons mentioned

22 above, Continental can prove a set of facts whereby the ARA does

23 not require Mundo to comply with the Policy.  Under such facts,

24 the economic loss rule would not bar the negligent

25 misrepresentation claim.  Accordingly, Mundo's motion to dismiss

26 this cause of action is DENIED.

1      **G.    Fifth Cause of Action:   Statutory Unfair Competition**

2          Continental claims that Mundo's conduct "constitutes

3   unlawful, unfair, or fraudulent business acts or practices,"

4   entitling Continental to recover under California's unfair

5   competition law (the "UCL"), California Business and Professions

6   Code section 17200 *et seq.*  The ARA created an agency

7   relationship that authorized Mundo to sell tickets for

8   Continental's flights.  Continental alleges that in the course of

9   issuing tickets pursuant to the ARA, Mundo engaged in certain

10  improper behavior.  Accordingly, all of the conduct that

11  Continental alleges violates the UCL arises from the relationship

12  of the parties that the ARA created.  The Court holds that

13  Virginia law applies to Continental's unfair competition claim.

14  See Nedlloyd, 3 Cal. 4th at 469.

15      A valid choice-of-law provision selecting another state's

16  law is grounds to dismiss a claim under California's UCL.

17  Medimatch, Inc. v. Lucent Techs., Inc., 120 F. Supp. 2d 842, 862

18  (N.D. Cal. 2000) (agreement that "construction, interpretation

19  and performance of this Agreement shall be governed by the local

20  laws of the State of New Jersey" required dismissal of California

21  UCL claims).  Continental claims that Virginia recognizes a claim

22  for "unfair competition," citing M-CAM v. D'Agostino, No. Civ. A.

23  3:05CV00006, 2005 WL 2123400 (W.D. Va. Sept. 1, 2005).  According

24  to M-CAM, "Virginia law defines unfair competition as:

25  'deception, by means of which the goods of one dealer are palmed

26  off as those of another.'"  Id. at *2 (citing Monoflo Int'l v.

                                21

1  <u>Sahm</u>, 726 F.Supp. 121, 127 (E.D. Va. 1989)).  Continental has not

2  alleged that Mundo has improperly "palmed off" any of

3  Continental's goods or services as another's or another's goods

4  or services as Continental's.

5      The Court is unaware of any authority for Continental's

6  unfair competition claim under Virginia law.  Counsel for

7  Continental alluded at oral argument to other cases that

8  recognize a cause of action under Virginia law on the facts

9  Continental alleges.  Continental remains free to file an amended

10  complaint that pleads an unfair competition claim based on

11  Virginia law.  Accordingly, Continental's Fifth Cause of Action

12  is DISMISSED WITHOUT PREJUDICE.

13

14      **ACCORDINGLY:**

15  1.   Continental's Fifth Cause of Action for Statutory Unfair

16       Competition is DISMISSED WITHOUT PREJUDICE.

17  2.   Mundo's motion to dismiss is DENIED with respect to

18       Continental's other causes of action.

19  3.   Continental shall file a second amended complaint within 30

20       days of the issuance of this order.  Failure to comply will

21       result in dismissal of the action.

22

23

24  IT IS SO ORDERED.

25  **Dated:  January 25, 2006**         ____/s/ Robert E. Coyle____
    810ha4                              UNITED STATES DISTRICT JUDGE
26

22